# John A. Murray *v.* Iron Hall of Baltimore City, Appellant.

*Contract—Mutually dependent covenants—Promise to pay money—When breach does not work forfeiture.*

If covenants are mutually dependent, a plaintiff must show full performance on his part, or a willingness to so perform before he can hold a defendant on his covenants but it would be inequitable to permit a defendant to set up a breach of covenant on the part of the plaintiff amounting to a forfeiture, where the breach was but a failure to pay money to the defendant at a time when the defendant was the plaintiff's debtor in the same transaction to an amount in excess of the sum due and payable by plaintiff to defendant.

*Equity—Policy touching forfeitures.*

While a court of equity will sustain a forfeiture under some circumstances, it will scrutinize the transaction and require that all the rights of the person, the forfeiture of whose rights are sought, shall be respected.

Argued Oct. 12, 1897. Appeal, No. 84, Oct. T., 1897, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 823, on verdict for plaintiff. Before RICE, P. J., BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Assumpsit. Before WILLSON, J.

It appears from the record and evidence that action was brought to recover on a certificate for $1,000 due by the Iron Hall of Indianapolis and assumed by the Iron Hall of Baltimore and that the court directed a verdict for plaintiff, subject to the point as to whether, in view of the failure of the plaintiff to pay a certain assessment at the time it was due under the by-laws of the association, he was entitled to recover.

Other facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $362.34. Defendant appealed.

*Error assigned* was entering judgment on the point reserved in favor of plaintiff.

*Dimner Beeber*, with him *Hampton L. Carson* and *J. Levering Jones*, for appellant.—It is to be observed that the suit is brought by the plaintiff in affirmance of the contract.

The appellee's right to sue for the recovery of the money paid in disaffirmance of the contract, and the proper measure of damages in such a suit, clearly appear in Smethurst v. Woolston, 5 W. & S. 106, Moorhead v. Fry, 24 Pa. 37, Wilkinson v. Ferree, 24 Pa. 190, and Ins. Co. v. McAden, 109 Pa. 399.

In the case of reciprocal covenants, constituting mutual conditions to be performed at the same time, the plaintiff must aver performance or a readiness to perform his part of the contract: Zerger v. Sailor, 6 Binney, 24; Friedly v. Scheetz, 9 S. & R. 156; Robison v. Tyson, 46 Pa. 286; Porter v. Rose, 12 Johns. 209; Crossgrove v. Himmelrich, 54 Pa. 203.

The subject is discussed and many of the cases quoted in a note to the case of Lake Shore and M. S. R. Company v. Richards, 30 L. Rep. Ann. 33; 152 Ill. 59.

The principle has been applied to an insurance case in the case of Bogardus v. Insurance Company, 101 N. Y. 328.

*Allen Gangewer*, with him *Joseph W. Kenworthy*, for appellee.—The dependence or independence of covenants is to be collected from the evident sense and meaning of the parties and their precedency must depend on the order of time in which the intent of the transaction requires their performance: 1 Beach on Contracts (1896), 113, and cases there cited.

Members are not absolutely bound by whatever law the society chooses to ordain and the right is, after all, solely in the courts to determine not only the meaning but also the reasonableness of the laws: 1 Bacon on Beneficial Societies, secs. 85, 86; Buchannan v. Heptasophs, 178 Pa. 465.

OPINION BY WILLIAM W. PORTER, J., December 15, 1898:

The plaintiff was a member of the Iron Hall of Indianapolis, which went into the hands of a receiver in August, 1892. He would have been entitled on November 24, 1892, to withdraw from the order $1,000, less $25.00 precedently received as sick benefits.

On December 22, 1892, he entered into a written agreement with the defendant, the Iron Hall of Baltimore city, by which he surrendered his rights against the Indianapolis society to the Baltimore society, and stipulated, inter alia: "I hereby agree, in connection therewith, to keep in force the membership in Iron Hall of Baltimore City, by paying promptly all the assessments thereon, until such times as all indebtedness shall be cancelled, relating to or connected with the benefit certificate herein surrendered. . . . I further agree to accept in payment or benefits the amounts due from certificate surrendered, in instalments, the first instalment dating three months from the termination of the certificate by date, and each remaining third in three and six months thereafter," etc.

The payments to be made by the defendant were subsequently altered to four quarterly payments of $250 each, one of which was paid in April, 1893, and one in July, 1893. Those due in October, 1893, and in January, 1894, were not paid. The plaintiff now sues for them, less the amount of a certain loading note accompanying his agreement with the defendant and reducing his claim to $333.34.

The obligation of the plaintiff, under his agreement, was to pay the assessments, until the defendant should have discharged

its indebtedness, incurred upon the surrendered certificate. The obligation of the defendant was to make the four quarterly payments at the times agreed.

The plaintiff paid all the assessments with the exception of one falling due in January, 1894. The defendant failed to pay the instalments due in October, 1893, and in January, 1894. On these facts the court below directed a verdict for the plaintiff.

The evidence does not show on what day of January, 1894, the final instalment was to be paid by the defendant. We must, therefore, assume that a payment at any time during January would have been a fulfilment of its obligation. The last assessment, due by the plaintiff, was made in December, 1893, and was payable not later than January 23, 1894. The failure to pay this assessment, as shown by the plaintiff's testimony, was not accidental. He made effort to secure funds for the purpose, but finally, as he says, "declined to pay any more assessments because the money due me had not been paid. I thought I would never get it." He brought suit in April, 1894, for the unpaid instalments.

The plaintiff asserts that he has performed all the obligations imposed upon him by his contract, and sues the defendant for a breach. To this the defendant replies that it was the plaintiff's obligation to pay all assessments made by the defendant until the defendant had made its final payment due on the surrendered certificate; that the plaintiff was to perform continuous successive acts at the same time that the defendant was obliged to perform, and that it is necessary for the plaintiff to allege and prove that he did perform and keep all the conditions of his contract, or that he was always ready and willing so to do.

The defendant committed a breach of the contract in October, by failing to pay the instalment then due. The plaintiff was obliged to continue his payment of assessments until the expiration of the year for the performance of the defendant of its obligation. It was not in our opinion obligatory upon the plaintiff to continue his membership and payment of assessments for a period of seven years, as contended by the defendant, but only for the period covered by the payment of the instalments contracted to be paid by the defendant. If the plaintiff desired

to remain a member entitled to the benefits of membership thereafter, he could do so.   This course, however, was optional; and in order to hold the defendant for the instalments, his duty required only the payments of the assessments levied during the period covered by the four instalments.

The question at issue is whether the plaintiff was exonerated from the payment of assessments after the default of the defendant in October, 1893.

The defendant does not deny its obligation to make the payment of $250 in October, 1893, nor that it failed to make the payment.   The attitude of the parties was that, at that time, the plaintiff had performed his covenants, and the defendant had committed a breach.   The time for the payment by the defendant was fixed.   The amount was certain.   The breach was not a failure to do a particular thing, but a failure to pay money.   Notwithstanding this condition of affairs, the plaintiff continued to pay assessments, and in the view we take of this case, had he paid the January assessment, there should be no doubt of his right to recover the two instalments in arrear.

If the covenants of the parties are to be regarded as independent, then the plaintiff is entitled to recover the amount claimed, and the defendant is remitted to his action against the plaintiff for the assessments.

If the covenants are mutually dependent, it is urged that the plaintiff must show full performance on his part, or a willingness to so perform before he can hold the defendant on its covenants.

But what are these mutual covenants?   Neither of them is to perform a service; neither of them deals with specific property.   Both covenants are for the payment of money.   The defendant's covenant is to pay in October, 1893, the sum of $250.   This remained unpaid in January, 1894.   Thus the defendant in January had in its hands a sum of money in excess of the sum then due by the plaintiff as an assessment under the same contract, and while it is possible that the defendant might not, in an independent transaction, apply the money in its hands to the debt of the plaintiff without his acquiescence or direction, it would be inequitable to permit the defendant to set up a breach of covenant on the part of the plaintiff amounting to a forfeiture, when the breach was but a failure to pay

money to the defendant at a time when the defendant was the plaintiff's debtor in the same transaction to an amount in excess of the assessments payable by the plaintiff. In the case of Girard Life Insurance Company v. Mutual Life Insurance Company, 97 Pa. 15, a policy of life insurance was forfeited for failure to pay a premium at a time when, it was alleged, the company had in its hands a dividend which might be applied to the payment of the premium. While the facts there differ from those of the case at bar, the principle involved is much the same. The court there say: "While a court of equity will sustain a forfeiture under some circumstances, it will scrutinize the transaction and require that all the rights of the assured shall be respected. It is quite possible, there may be facts which in the judgment of the officers of the defendant company justified them in declaring the policy forfeited in this case; yet we are constrained to say, that it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has the power to apply to its payment." See also Matlack v. Bank, 180 Pa. 360, 386.

The judgment of the court below is, therefore, affirmed on credit thereon being entered for the amount of the assessment payable on January 23, 1894, with interest from that date.