In re PHOENIX DENTAL SYSTEMS, INC., Debtor.

William MOROSKY, D.M.D., Movant,

v.

PHOENIX DENTAL SYSTEMS, INC., Respondent.

Bankruptcy No. 91–00187E.
Motion No. 92–0194.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 11, 1992.

---

Thomas P. Agresti, Erie, Pa., for debtor.

Chester A. Dudzinski, Pittsburgh, Pa., for William Morosky, D.M.D.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Before the Court is a Petition for Declaratory Relief filed by William Morosky, D.M.D. ("Dr. Morosky") requesting an Order granting him the right to contact former patients which he served while employed at Phoenix Dental Systems, Inc. ("Debtor" or "Phoenix Dental").

Dr. Morosky asserts that the First Amendment of the United States Constitution protects a professional's right to contact his former patients where the professional's prior employer is in bankruptcy. Dr. Morosky further asserts that the names of the Debtor's patients are not trade secrets and that even if the patient names are trade secrets, Dr. Morosky is entitled to contact those patients known to him from relationships outside of his employment with the Debtor.

It is the Debtor's position that the First Amendment protections of commercial speech have no applicability to the facts of this case, that the patient names are a trade secret of the Debtor, and that Dr.

Morosky has no right to interfere with patient relationships which were created through the efforts of the Debtor.

## Facts

Dr. Morosky was hired as part of the Debtor's professional staff for the purpose of providing dental services. No restrictive covenant or other such contractual restriction exists between Dr. Morosky and the Debtor. The Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on March 5, 1991. Subsequently, Dr. Morosky terminated his employer/employee relationship with the Debtor effective March 28, 1992 and entered the private practice of dentistry. The Debtor permitted Dr. Morosky to take the files of certain patients identified as Dr. Morosky's family members and personal friends.

By letter dated March 20, 1992, the Debtor stated its position that, other than family members and personal friends, Dr. Morosky had no right to contact any patient to notify them of his departure and of his availability for future treatment. Dr. Morosky then filed the within Petition for Declaratory Relief seeking an Order granting him the right to contact former patients which he served as an employee of the Debtor.

## Issues

1. Whether the First Amendment of the United States Constitution protects a dentist's right to contact patients he formerly served as an employee of another entity.

2. Whether the names of the Debtor's patients are trade secrets.

3. Whether Dr. Morosky may contact patients he served prior to his employment as well as patients he obtained through efforts of his own during his employment with the Debtor.

## Discussion

### I. First Amendment

■ Dr. Morosky directs us to the cases of *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) and *Shapero v. Kentucky Bar Association,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) to support his assertion that the protections of the First Amendment give him the right to contact former patients which he served as an employee of the Debtor.

The *Metromedia* and *Shapero* cases stand for the proposition that Dr. Morosky has a right to advertise his services to the public and any prohibition placed on him by professional societies, governmental units or other entities is improper. The Debtor has no objection to Dr. Morosky advertising his services to the public.

Dr. Morosky, however, is not asserting merely a right to advertise to the public, but wants the right to contact the Debtor's patients with whom Dr. Morosky had contact while employed by the Debtor. The First Amendment protection afforded "commercial speech" in the above cases does not apply to the instant case.

The First Amendment does not shield a party from liability for inappropriate interference with existing relationships of the Debtor with its patients.

### II. Trade Secrets

■ Information which is confidential and constitutes a valuable asset is a trade secret for which an employer is entitled to protection from disclosure or use by former employees. *Robinson Electronic Supervisory Co., Inc. v. Johnson,* 397 Pa. 268, 154 A.2d 494 (1957); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957).

■ The information must be a particular secret of the employer and not a general secret of the trade in which he is engaged. *Morgan's Home Equipment,* 390 Pa. at 624, 136 A.2d at 842; *Bettinger v. Carl Berke Assoc., Inc.,* 455 Pa. 100, 314 A.2d 296 (1974). The right of an employer to be protected against improper use of a trade secret by a former employee must be balanced against the right of the employee to pursue his occupation and livelihood. *Fidelity Fund, Inc. v. DiSanto,* 347 Pa.Super. 112, 500 A.2d 431 (1985).

■ Numerous Pennsylvania courts have discussed the issue of whether an employee's use of his former employer's customer client names constitutes an improper use of a trade secret. If the customer names and information have been compiled by the employer and represent a material investment of the employer's time and money, the information is highly confidential and is a valuable asset of the employer. Such data constitutes a trade secret and is not subject to use or dissemination by a former employee. *Robinson*, 397 Pa. at 272–73, 154 A.2d at 496–97; *Morgan's Home Equipment*, 390 Pa. at 623, 136 A.2d at 842.

■ However, where the customer names and information is widely known throughout the industry or where such information is readily ascertainable from an independent source, the employer's customer list is not so protected. *Fidelity Fund, Inc. v. DiSanto*, 347 Pa.Super. 112, 500 A.2d 431 (1985); *Bettinger v. Carl Berke Assoc., Inc.*, 455 Pa. 100, 314 A.2d 296 (1974); *Van Products v. General Welding and Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965).

■ Dr. Morosky asserts that the names of the Debtor's patients are general information and not a particular secret of the Debtor's business; that the patient names "constitute nothing more than names of individuals who may need dental work;" and that because "all persons eventually need dental work," the names of specific and particular people that come to the Debtor's offices are not a particular secret.

We find that the names of the Debtor's patients are a trade secret. The names of the Debtor's patients are unique to the Debtor and are not ascertainable from an outside source. The Debtor's patients are its most valuable asset. Each patient obtained services at the Debtor's place of business, from employees of the Debtor and with the Debtor's equipment. The patient relationships were created through the efforts of the Debtor. The patients were directed by the Debtor to Dr. Morosky as an employee of the Debtor. Dr. Morosky is not entitled to benefit from the Debtor's direction of patients to him in trust and confidence while he was an employee. Dr. Morosky will be prohibited from interfering with the relationships between the Debtor and the Debtor's patients.

III. Patients Known to Dr. Morosky Outside of Employment with the Debtor

■ Dr. Morosky asserts that he is "entitled to contact patients he had prior to his employment with Phoenix Dental as well as patients he obtained through efforts of his own while employed at Phoenix." In support of this assertion, Dr. Morosky directs us to *Fidelity Fund, Inc. v. DiSanto, supra.*

In *Fidelity*, the employer, Fidelity, was an insurance broker. Fidelity hired DiSanto as an insurance salesman. Although DiSanto had not been engaged in the insurance business for three years prior to his employment with Fidelity, he had developed a large number of contacts with commercial insurance customers during his prior years of employment in the insurance industry. While employed at Fidelity, DiSanto wrote insurance policies for some of his former customers, made new contacts by his own actions and obtained clients through Fidelity.

DiSanto subsequently left the employ of Fidelity and began working for another insurance broker. DiSanto continued to sell insurance to customers he had prior to his employment with Fidelity, those which he had developed by his own contacts while in Fidelity's employ, and to those which were developed by leads from Fidelity.

The *Fidelity* Court held that the employer had no protected interest in customers known to the employee prior to his employment relationship and in those customers known to the employee from relationships outside of his employment. The Court held that the employee was properly restrained from soliciting customers which were developed as a result of the employer's efforts.

Dr. Morosky has submitted a list of patients that "he believes were contacts cre-

ated by virtue of referrals from patients and a fellow dentist, Dr. Cerami, prior relationships and/or otherwise created by goodwill through by [sic] his own actions." "Dr. Morosky does not believe that any individuals on this list were created by virtue of his position at Phoenix Dental ..." and thus asserts that he may contact these individuals in accordance with the law as set forth in *Fidelity*.

We find that the facts of this case are inapposite to those of *Fidelity*. In the insurance industry, it is usual for a salesman who works on a commission to call on potential commercial customers at the customer's place of business. The potential customer most often deals with the salesman and seldom, if ever, visits the insurance broker's (employer's) office. The insurance salesman is often the sole contact concerning the product purchased, an insurance policy.

Quite the opposite is true in the operation of a dental clinic. Every time a patient requires service, he must visit the employer's place of business. This requires use of the employer's facilities including the employer's reception area, receptionist, equipment, dental assistants, and the services of the dentist who is a salaried employee.

Thus, every patient is created by the special efforts of the Debtor to provide a facility for treatment. It is not possible to develop patient relationships at the Debtor's facility "solely through the efforts" of the dentist/employee. The patient files and patient names are likely the Debtor's greatest asset.

Restrictions on a former employee's use of information is not without limits. Competing policies are at stake—the right of an employer to be protected against usurpation of its trade secrets must be balanced against the right of a former employee to pursue his occupation and livelihood. *Fidelity*, 347 Pa.Super. at 120, 500 A.2d at 436.

The Debtor has already provided Dr. Morosky the opportunity to retain as patients his personal friends and relatives. There is nothing to prevent and the Debtor has no objection to advertisements by Dr. Moro-

sky to the public in general. It is likely that some patients who have received treatment by Dr. Morosky will want to continue with him in his new association. There is nothing to prevent patients from contacting Dr. Morosky as a result of his public advertisements. However, Dr. Morosky may not take advantage of his position of trust and confidence as an employee of the Debtor to personally solicit the Debtor's patients.

We do not believe it appropriate to impose such restrictions indefinitely. Where the nature of patient contact in the dental field is likely to be infrequent, we find that allowing a period of two (2) years for protection of the Debtor to strengthen and reaffirm its patient contacts appropriate.

Accordingly, we will issue an Order preventing Dr. Morosky from the inappropriate solicitation of the Debtor's patients for a period of two years.

### ORDER

This 11 day of August, 1992, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

William Morosky, D.M.D. is enjoined from direct solicitation of the patients of Phoenix Dental Systems, Inc. for a period of two (2) years from the date of this Order.