Carl A. Colteryahn Dairy, Inc. *v.* Schneider Dairy, Appellant.

Argued May 25, 1964.   Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Henry E. Rea, Jr.,* with him *Carl Brandt,* and *Brandt, Riester, Brandt & Malone,* for appellants.

*Guy L. Warman,* with him *John A. Metz, Jr., Joseph Swartz,* and *Swartz & Dale,* and *Metz, Cook, Hanna & Kelly,* for appellee.

OPINION BY MR. JUSTICE JONES, September 29, 1964:

This is an appeal challenging the validity of a decree of the Court of Common Pleas of Allegheny County which enjoined for a four month period (1) four individuals from (a) divulging the names or soliciting the patronage of customers of their former employer and (b) diverting any business of their former employer or attempting to persuade customers of their former employer from continuing their patronage, and (2) a corporation from (a) soliciting the patronage of customers of the plaintiff-appellee who became known to the individual defendants through a previous employment and (b) entering into new business relationships with such customers.

On January 26, 1964, following competitive bidding, Baldwin Dairy (Baldwin), which operated eight retail milk routes in the South Hills area of Allegheny County, was purchased by Carl A. Colteryahn Dairy, Inc. (Colteryahn). The Schneider Dairy (Schneider), had submitted a bid which was subsequently withdrawn. Colteryahn and Schneider are two of thirteen

major dairies which maintain milk routes in the South Hills area.

For some time[1] prior to the date of the sale, Ronald Yochum, Richard Rump, Albert Eltringham and Wayne Herman had been employed by Baldwin as driver-salesmen on certain specified retail routes. Shortly after the sale, these men gave Colteryahn seven days notice[2] of their intention to leave its employ,[3] admittedly giving false reasons for relinquishing their jobs, and went to work on February 3, 1964, for Schneider. Immediately after assuming employment with Schneider, they began to solicit the business of their former Baldwin customers.

Colteryahn promptly instituted an equity action in the Court of Common Pleas of Allegheny County against Schneider and the four individual employees seeking both injunctive relief and damages. The action averred that Schneider was maliciously interfering with the business relations of Colteryahn and that Yochum, Rump, Eltringham and Herman were soliciting their old customers of Baldwin and, in some instances, making false and misleading statements to them. After an extensive hearing, the court below granted injunctive relief. It is from that preliminary decree that this appeal has been taken.

It is well established that on appeal from a decree which grants or continues a preliminary injunction, the appellate court will look only to see if there were any apparently reasonable grounds for the action of the court below: *Philadelphia Minit-Man Car Wash*

---

[1] Rump had been employed by Baldwin for approximately 4½ years; Eltringham approximately 16 months; Herman, 14 months; Yochum, 5 months.

[2] This notice was required by the union contract then in force.

[3] The former Baldwin employees would have been retained at least temporarily by Colteryahn after taking over. It is clear that they were not guaranteed permanent positions with the new owner.

*Corporation v. Building and Construction Trades Council of Philadelphia and Vicinity,* 411 Pa. 585, 192 A. 2d 378. There are two contentions advanced to justify injunctive relief: (1) the canvassing by the driver-salesmen of the customers on their former Baldwin routes and/or (2) the use of false and misleading statements by the salesmen to Colteryahn's (formerly Baldwin's) customers. We shall examine each contention to determine its merit.

It is clear that an employee, absent an agreement to the contrary, has no duty not to compete with a former employer upon severance of their relationship: Restatement (2d), Agency, §396(a). However, we have long recognized that the use of confidential material obtained by an employee from a position of trust and confidence may not be used in later competition to the prejudice of his employer: *Macbeth-Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 86 A. 688; *Dozor Agency v. Rosenberg,* 403 Pa. 237, 169 A. 2d 771. Colteryahn's position here is that the customer lists and information retained by the individual appellants constitute trade secrets and that the use thereof in Schneider's employ is prohibited. Our inquiry is to ascertain whether the names, addresses and other information concerning customers constitute such confidential material as to entitle Colteryahn to protection against its competitive use.

A driver-salesman hired by Baldwin received a route comprising 200-300 homes located in a specific geographic area. Each also received a list of the customers' names and addresses and information concerning the products they purchased. While initially unfamiliar with the clientele, a personal association would soon develop, as it was the driver's responsibility to maintain his route. This relationship is built up solely through the personality and resourcefulness of the routeman and, as will be noted more fully later, is one

of the most significant tools of his trade. There is a normal rate of attrition in the dairy business. Customers die, move or any of a myriad of circumstances occur which change their status with the dairy. Thus, it is encumbent upon the salesmen to continually seek new patrons. The testimony of all parties indicated that it was completely acceptable, in fact good business, to solicit competitor's customers in an honorable way. Colteryahn's only complaint here is that the appellants attained an unfair competitive advantage by using allegedly unethical conduct, to wit: the use of names and addresses of former customers for solicitation purposes, said information being retained entirely in the minds of the drivers, no physical lists or materials being taken upon separation.

Generally, in the absence of an express contract to the contrary, solicitation of a former employer's customers, on behalf of another in competition with his former employer, will not be enjoined. This rule has been recognized by numerous text writers and courts.[4] However, even in the absence of such an express agreement, an employer is entitled to equitable protection against the competitive use of confidential and secret information obtained as a result of the trust and confidence of previous employment: *Robinson Electronic Supervisory Co., Inc. v. Johnson,* 397 Pa. 268, 154 A. 2d 494; *Dozor Agency v. Rosenberg,* supra.

We are here concerned with the use of customer names and addresses retained solely by the mental processes and, admittedly, the major part of such information was obtained from Baldwin during the time of employment. Numerous jurisdictions have held that the above-noted exception does not apply where the knowledge is carried in the memory of the former

---

[4] 73 Harv. L. Rev. 625, 657; 126 A.L.R. 758; *Standard Library v. Addis,* 167 Misc. 469, 3 N.Y.S. 2d 488; *Woolley's Laundry Inc. v. Silva,* 304 Mass. 383, 23 N.E. 2d 899.

employees, even where it was at least partially obtained from lists furnished during employment.[5] This concept is also recognized by the Restatement (2d), Agency, §396, which provides: "Unless otherwise agreed, after the termination of the agency, the agent: . . . (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. *The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent.*" (Emphasis supplied). An analysis of the present facts leads us to the conclusion that, by their actions, the appellants violated no duty owed Colteryahn.

Once handed the customer list by Baldwin the responsibility for the route rested with the driver-salesman. His cultivation of a working relationship with the customers was imperative to his survival in this phase of the dairy business. For expeditious operation of the route, and indeed the result of daily repetition, the names, addresses and orders were quickly memorized. Thus, even though the route books were returned when leaving Colteryahn's employ, the facts here involved remained imbedded in the mental processes of the individual drivers. No fraud or deception was used to obtain this knowledge. It was merely the

---

[5] *Woolley's Laundry Inc. v. Silva,* supra (laundry route) ; *May v. Angoff,* 272 Mass. 317, 172 N.E. 220 (newspaper and magazine distributor) ; *Commonwealth Laundry Co. v. Daggett,* 283 Mass. 79, 186 N.E. 41 (laundry route) ; *Standard Library v. Addis,* supra (circulating library route) ; *Sanitary Farm Dairies, Inc. v. Wolf,* 261 Minn. 166, 112 N.W. 2d 42 (dairy route).

result of the performance of their job. It is also apparent that in the subsequent solicitation of Colteryahn customers nothing except names and addresses was used, although any general information on the operation of the business could have been. The record indicates that such facts as where the milk was deposited, the size and composition of orders, etc., played no part whatsoever in the initial attempts to secure old customers. This was done on a *purely personal basis,* relying solely on the relationship established between driver and customer. The record clearly shows, from the testimony of numerous men with extensive experience in the field of dairy operations, and indeed common sense would also dictate, that the most significant factor in the retention of customers in the retail dairy industry is the personal contact with the route drivers. This is fostered in part by the high minimum standards of product quality required by government and the industry itself. This relationship is the foremost working tool of the driver-salesman and is his own work product. Under these facts no duty was violated by its use. As this Court stated in *Spring Steels, Inc. v. Molloy,* 400 Pa. 354, 363, 162 A. 2d 370: "Nor is the fact that the new company may acquire some of the plaintiff's former customers contrary to law. It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or in association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis that some of those customers will want to continue to deal with him in his new association. This is so natural, logical and part of human fellowship, that an employer who fears this kind of future competition must protect himself by a preventive contract with his employee, unless, of course, there develops a confidential

relationship which of itself speaks for non-disclosure and non-competition in the event the employer and employee separate. There is nothing of that in this case."

Route listings in the retail dairy business cannot be considered as trade secrets so as to enjoin their use under common law principles.[6] A normal driver would know which dairies were delivering to the other people on the streets he was serving. This was illustrated by the testimony of a former driver, now sales manager of a dairy operation, with over thirty years experience in the field. Also, if the identity of a majority of a competitor's route customers was desired, it could be ascertained without great difficulty in most instances; a delivery truck need only be followed during a period of one or two runs, the nature of the retail dairy business being such that most patrons would receive an order at least every few days. The time and expense of this tactic would be almost nominal. It is thus apparent, after brief reflection, that these lists are generally not the type secrets which require equitable preservation. Equity will not protect mere names and addresses easily ascertainable by observation or reference to directories: *Denawetz v. Milch,* 407 Pa. 115, 178 A. 2d 701.

The court below granted the injunction based solely on *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838. *Morgan* was a case in which restrictive covenants were enforced against former employees of a company engaged in the installment selling of household articles through door-to-door sales-

---

[6] Noting that there is no specific agreement as to the future use of this information, we also note that the presence of a non-disclosure covenant would be indicative of the confidential nature of the data protected: *Empire Steam Laundry v. Lozier,* 165 Cal. 95, 130 P. 1180; *Todd Protectograph Co. v. Hirschberg,* 100 Misc. 418, 165 N.Y. Supp. 906.

men-collectors. There we said: "In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent a material investment of employers' time and money. This information is highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices." (p. 623). While this is a correct statement of the law as applied to the facts in *Morgan*, it is not applicable here.

The type and extent of contact between the company and customer varies sufficiently between the retail dairy industry and the door-to-door installment selling of household articles to distinguish *Morgan* from the case at bar. The restrictive agreement in *Morgan* is also indicative of the confidential nature of the material: supra, Note 6. *Morgan* is clearly distinguishable from the case at bar.

There was some testimony that the drivers, in soliciting their former customers, made false and misleading representations as to the circumstances under which they left the employ of Colteryahn and such representations were made to play on the sympathies of the customers and influence them so that they could be obtained by Schneider. Allowing this type of conduct is to countenance unfair competition. Equity will prevent unjustified interference with contractual relations: *Neel v. Allegheny County Memorial Park*, 391 Pa. 354, 137 A. 2d 785. We believe that the decree of the court below should be modified to enjoin only this type of improper solicitation and conduct on the part of the individual appellants.

The decree, as modified in accordance with this opinion, is affirmed. Each party to bear own costs.