## Marvin Shore Advertising, Inc. v.
## The Legal Intelligencer, Inc.

*Ronald S. Sklar*, for plaintiffs.
*Charles H. Greenberg*, for defendants.

BOLGER, *J.*, November 6, 1975—The case at bar is a suit in equity. The corporate defendant, a newspaper, formerly retained plaintiffs, an advertising firm, to sell advertising space. Plaintiffs formerly employed the individual defendant to sell advertising space in the newspaper. The individual defendant left the employ of plaintiffs and entered the employ of the newspaper. As an employe of the newspaper, the individual defendant does essentially the same work as he once did in the employ of plaintiffs.

Plaintiffs allege that, while in their employ, the individual defendant acquired items of confidential

information, customer lists and trade secrets. They allege that he wrongfully makes use of the said matter in the course of his duties as an employe of the newspaper. They allege that, while the contractual relationship between the newspaper and plaintiffs was still in effect, the individual defendant procured, and the newspaper accepted, advertisements from clients who had been solicited and obtained by plaintiffs. They allege that, after the termination of their employment of the individual defendant, he solicited advertising business on behalf of the newspaper. They allege that defendants conspired to cause the termination of the contractual relationship between plaintiffs and the newspaper.

Defendants filed an answer, new matter and counterclaims. The answer specifically and fully denies all allegations of wrongdoing on the part of defendants. It denies that the individual defendant has in his possession confidential information, customer lists or trade secrets which he acquired during the term of his employment by plaintiffs. It avers that plaintiffs unilaterally terminated their employment of the individual defendant. It avers that the contractual relationship between plaintiffs and the newspaper terminated automatically, in accord with the terms of their written contract. In the new matter, the newspaper alleges that plaintiffs wrongfully misappropriated the proceeds of certain discounted prices which they failed to extend to advertisers in the newspaper. In its counterclaim, the newspaper demands payment of sums past due, as per invoices which are attached to the counterclaim. In his counterclaim, the individual defendant demands payment of: unpaid vacation pay, commissions past due, and salary owed. Defendants allege that plaintiffs have come into this court of equity with unclean hands.

Plaintiffs initially demanded both injunctive relief and monetary damages. At trial, they abandoned their former prayer. However, they had failed to answer the new matter and counterclaims of defendants. Therefore, on February 25, 1975, this court entered judgments in favor of each defendant on the counterclaims. On April 28, 1975, it dismissed plaintiffs' petition to open the said judgments.

## ISSUES

The following issues are raised for determination in the case at bar:

(1) Are plaintiffs entitled to compensation for defendants' wrongful use of confidential information, customer lists, or trade secrets?

(2) Are plaintiffs entitled to compensation for other forms of unfair or wrongful competition by defendants?

(3) Have defendants wrongfully conspired to cause the termination of the contractual relationship between plaintiffs and the newspaper?

(4) Have plaintiffs suffered monetary damages as the result of wrongful conduct on the part of defendants?

(5) Have plaintiffs entered this court of equity with unclean hands?

## FINDINGS OF FACT

(1) On June 16, 1972, plaintiffs and the newspaper executed a written contract whose terms speak for themselves.

(2) A true and correct copy of the said contract has been marked as exhibit P-1 and received into evidence.

(3) On October 17, 1972, plaintiffs and the individual defendant entered into an oral contract of employment from week to week, and without a so-called restrictive covenant.

(4) Plaintiffs did not impart, and the individual defendant did not acquire, any confidential information, customer lists or trade secrets during the course of the former party's employment of the latter party.

(5) The newspaper, during its contractual relationship with plaintiffs, extended discounted prices for its advertising space. These discounted prices were based upon the quantity of advertising placed.

(6) All of the said discounted prices were set forth upon the newspaper's rate cards which were furnished to plaintiffs.

(7) During the course of the contractual relationship between plaintiffs and the newspaper, plaintiffs failed to extend the said discounted prices to advertisers in the newspaper. Rather, plaintiffs collected from advertisers the gross, regular prices and remitted to the newspaper the said amounts, less the established discounts.

(8) As a result of plaintiffs' aforesaid course of conduct, the good will and competitiveness of the newspaper's advertising business were detrimentally affected.

(9) Plaintiffs engaged in the aforesaid course of conduct without the knowledge or consent of the newspaper.

(10) On June 4, 1974, plaintiffs wrongfully discharged the individual defendant from their employ.

(11) Subsequent to his wrongful discharge by plaintiffs, the individual defendant, acting in the capacity of free-lance advertising representative,

solicited advertising contracts for placement in the newspaper. He did not do so as an authorized representative of the newspaper.

(12) On June 3, 1974, for the very first time, the individual defendant approached representatives of the newspaper to ask if he could handle the newspaper's advertising business in the event that he left the employ of plaintiffs and started his own advertising firm.

(13) In the interim between June 4, 1974, and June 16, 1974, the newspaper rejected the individual defendant's bid to represent it as an independent contractor. However, on June 17, 1974, it did offer to employ the individual defendant as its advertising manager.

(14) The individual defendant accepted the said offer of employment.

(15) On June 16, 1974, the written contract between plaintiffs and the newspaper expired naturally, by its own terms.

(16) Plaintiffs have not proven that they have suffered monetary damages as the result of wrongful conduct on the part of defendants.

(17) The judgments which have been entered upon the counterclaims and findings of fact number five through nine indicate that plaintiffs have breached their contracts with each of defendants.

## DISCUSSION AND CONCLUSIONS OF LAW

The contract between plaintiffs and the newspaper was, by its terms, nonexclusive. It expired, automatically, on June 16, 1974. The newspaper was under no obligation to renew the said contract.

The contract between plaintiffs and the individual defendant was terminable, at will, at the end of each week of employment. It did not contain a restrictive covenant. Upon the termination of the contract between plaintiffs and the individual defendant, the latter party was free to compete with his former employers, even if this competition entailed solicitation of his former employers' clientele: Restatement 2d, Agency, §396; Carl A. Colteryahn Dairy v. Schneider Dairy, 415 Pa. 276, 203 A. 2d 469 (1964). Plaintiffs have failed to establish that they have suffered monetary damages as the result of wrongful conduct on the part of defendants.

This court hereby reaches the following conclusions of law.

(1) Plaintiffs are not entitled to compensation for defendants' wrongful use of confidential information, customer lists or trade secrets.

(2) Defendants have not engaged in any form of unfair or wrongful competition with plaintiffs.

(3) Defendants have not conspired to cause the termination of the contractual relationship between plaintiffs and the newspaper.

(4) Plaintiffs have not suffered monetary damages as the result of any wrongful conduct on the part of defendants.

(5) Plaintiffs have entered this court of equity with unclean hands.

## DECREE NISI

And now, November 6, 1975, it is hereby ordered and decreed that plaintiffs' complaint in equity is dismissed.

The prothonotary is directed to file this adjudication of record and to forthwith give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days after notice has been given of the filing of this adjudication, the decree nisi shall be entered by the prothonotary, on praecipe, as the final decree.