652 A.2d 1345

**RENEE BEAUTY SALONS, INC., d/b/a Outlooks for Hair, Appellant,**

**v.**

**Kristine BLOSE–VENABLE, Gwynn L. DeLong, Pamela Miller, Bonnie Lou Fogle, Tracy Campanell, Duane A. Decal, Donna O'Rourke, Kerrie L. Semmel, Michael J. Allen, KPM Design Group, Inc.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1994.

Filed Jan. 12, 1995.

James P. Wallbillich, Pottsville, for appellant.

James T. Huber, Allentown, for appellees.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge.

This is an appeal from the Order entered December 9, 1993 vacating the injunctive Order of July 30, 1993 and dismissing plaintiff's motion to enforce the preliminary injunction and for contempt. Plaintiff/appellant, Renee Beauty Salons, Inc., d/b/a Outlooks for Hair ("Renee"), filed an action in equity on July 7, 1993 against appellees, Blose–Venable, DeLong, Miller, Fogle, Campanell, Decal, O'Rourke, Semmel and Allen, former employees of Renee ("former employees"), and KPM Design Group, Inc., a corporation formed by some of the former employees. KPM owns and operates Apropos, a Hair, Skin and Nail Salon ("Apropos"), a competing beauty salon in

Allentown at which the former employees, with the exception of Tracy Campanell, are now employed.

The underlying equity action arose from events occurring in the summer of 1993. In the last weeks of June 1993, the former employees left Renee and began to contact their former customers to inform them of the creation of Apropos. In its July 7, 1993 complaint, Renee alleged the former employees misappropriated Renee's trade secrets by using confidential customer information and lists developed and protected by Renee, in unfair competition with Renee. The chancellor entered a special injunction pursuant to Pa.R.C.P. 1531, and scheduled a hearing on the matter for July 12, 1993. Following the hearing and argument on July 23, 1993, the chancellor entered a modified injunction Order on July 30, 1993. The modified injunction enjoined the defendants from contacting or soliciting business from any customers of Renee, and ordered defendants to return to Renee any customer lists, computer discs or other proprietary information obtained and/or taken by defendants after leaving Renee's employ.

On October 14, 1993, Renee filed a motion to enforce the preliminary injunction and for contempt. Hearing was held on the motion on November 8, 1993. By Order dated December 9, 1993, the chancellor vacated the July 30, 1993 injunction and dismissed Renee's motion to enforce and for contempt. In its supporting memorandum Opinion, the chancellor found Renee's customers were highly confidential information and constituted a valuable asset in the nature of "trade secrets" for which the employer would be entitled to protection. The chancellor found no significance in whether this information was embodied in written lists or committed to memory; in either case, it was entitled to protection. (Slip Op., Diefenderfer, P.J., 12/9/93, pp. 2–3.) *See Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 624, 136 A.2d 838, 843 (1957). The chancellor further found, however, that Renee encouraged a policy of inducing hair stylists from other salons to join Renee and bring with them their customer lists from their former employers. As such, Renee had violated the equitable

principle of "clean hands," and was not entitled to relief. This appeal followed.

On appeal, Renee argues the chancellor incorrectly determined Renee was not entitled to relief for the misappropriation of its trade secrets by its employees and KPM, due to the court's finding of "unclean hands."

■ As an initial matter, we note that this Court's scope of review of a decision to grant, deny or continue an injunction is limited. *Crozer Chester Medical Ctr. v. May*, 352 Pa.Super. 51, 506 A.2d 1377 (1986). The focus of our review is to determine if reasonable grounds existed for the chancellor's action. *Giant Eagle v. Local Union No. 23*, 425 Pa.Super. 186, 624 A.2d 208 (1993). An Order denying a preliminary injunction will not be reversed unless there has been a clear abuse of discretion or an error of law. *S.D. Bowers, Inc. v. National Bank*, 404 Pa.Super. 512, 591 A.2d 324 (1991). Applying that standard to our review of the record in this case, we affirm.

■ The considerations underlying a "trade secret" claim have been the subject of many cases in this Commonwealth. "The problem of accommodating the competing policies can be stated thus: the right of a business person to be protected against unfair competition stemming from the usurpation of his or her trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupations and livelihoods for which he or she is best suited." *Fidelity Fund, Inc. v. Di Santo*, 347 Pa.Super. 112, 120, 500 A.2d 431, 436 (1985). Under such an analysis, and even assuming, arguendo, that in certain situations customer lists and related information can be a trade secret, we still consider customer lists to be at the very periphery of the law of unfair competition.

Our Supreme Court, per Justice Musmanno, stated at an earlier juncture:

It was within the range of foreseeability for the plaintiff to realize that some day [an employee] might want to seek other pastures. There invariably comes the time when the

employee leaves his employer, the apprentice leaves his master, the student leaves his tutor and the son leaves his father. To hold the employee, apprentice, student or son beyond the period of natural legal emancipation, a quid pro quo is required. There was no quid pro quo in the case at bar.

To enjoin a former employee from entering into such employment as he wishes is in the nature of a restraint on one's liberty. Such restraint may be in order depending on circumstances which are not present in this case. As Justice Cohen said in the case of *Wexler v. Greenberg,* 399 Pa. 569, 576, 160 A.2d 430, 434:

"Where, however, an employee has no legally protectable trade secret, an employee's 'aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment are not the property of his employer and the right to use and expand these powers remains his property unless curtailed though some restrictive covenant entered into with the employee'. [*Pittsburgh Cut Wire Co. v. Sufrin,* 350 Pa. 31, 35, 38 A.2d 33, 34.] The employer thus has the burden of showing two things: (1) a legally protectable trade secret; and (2) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief."

Comment "e" of Section 393 of the Restatement of Agency, Second, is particularly relevant and significant when applied to the facts in this case:

"After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. See sec. 396. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete * * * "

Nor is the fact that the new company may acquire some of the plaintiff's former customers contrary to law. *It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or in association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis that some of those customers will want to continue to deal with him in his new association.* This is natural, logical and part of human fellowship, that an employer who fears this kinds of future competition must protect himself by a preventive contract with his employee, unless, of course, there develops a confidential relationship which of itself speaks for non-disclosure and non-competition in the event the employer and employee separate. There is nothing of that in this case.

*Spring Steels, Inc. v. Molloy,* 400 Pa. 354, 361–364, 162 A.2d 370, 374–375 (1960) (emphasis added).

The sole case upon which the chancellor herein relied in deciding the trade secret issue, *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957), predated the decision in *Spring Steels, supra,* and is distinguishable from the case before us. Therefore, the precedential value of *Morgan* to this case, to say the least, is limited. In *Morgan,* plaintiff, a business "engaged in the installment selling of household articles through door-to-door salesmen-collectors," filed a complaint in equity against former salesmen who had gone to work for a competing business, charging them with breaking restrictive covenants, misusing secret information obtained while employed by plaintiff and misleading customers by using forms which gave the impression that defendants were still soliciting on behalf of Morgan.

The Supreme Court stated:

In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent a material investment of employers' time and money. This information is

highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a "trade secret" for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices. In *Macbeth–Evans Glass Co. v. Schnelbach,* 1913, 239 Pa. 76, 85–86, 86 A. 688, 690–91, we had occasion to discuss the nature of "trade secrets" and the reasons underlying their judicial recognition:

> It may now be accepted as settled law, under the authority of English and American cases, that courts of equity if the facts warrant, will restrain an employee from making disclosure or use of trade secrets communicated to him in the course of a confidential employment. *The character of the secrets, if they be peculiar and important to the business, is not material.* They may be secrets of trade, * * * or any other secrets important to the business of the employer. They, however, must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged * * *. The duty of the servant not to disclose the secrets of the master may arise from an express contract, *or it may be implied from their confidential relations.*
>
> "* * * *Where confidence is reposed, and the employe by reason of the confidential relation has acquired knowledge of trade secrets, he will not be permitted to make disclosure of those secrets to others to the prejudice of his employer."* (Emphasis supplied.)
>
> We agree that confidential customer data are entitled to protection as a trade secret within the meaning of the Macbeth–Evans rule.

*Id.* 390 Pa. at 622, 136 A.2d at 842 (footnotes omitted).

■ In light of the Court's subsequent decision in *Spring Steels* and the limiting language of *Morgan* and *Macbeth–Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 86 A. 688 (1913), we find *Morgan* inapplicable to this case. Specifically, in order to be protected, trade secrets "must be the particular secrets of the complaining employer, not general secrets of the

trade in which he is engaged." *Macbeth–Evans, supra* at 85, 86 A. at 691.

It need not be gainsaid that the business of hair styling, like most service industries, requires the compilation of customer information. Many stylists maintain records of customers' names, telephone numbers, hair styling preferences and the like. So, too, in this case, Renee utilized a client record card, which bore at the bottom the notation that the "card and its information is [sic] the sole property of Renee Beauty Salons, Inc. It is forbidden for any employee or third party to misuse or steal salon information." Eventually, Renee's card system was replaced by a computer system which stored the data on a computer disk. There was no evidence presented, and defendants denied, that defendants had removed the disk to obtain customer information, or had used the computer to print customer lists. Instead, defendants testified that through repeatedly servicing the same customers, as well as through personal contacts with the clients, who in many cases were friends and relatives of defendants, they had memorized the names of the customers. Each stylist, then, when they left Renee for Apropos, compiled from memory a list of their customers, i.e., their friends and relatives, which was then used by the former employees to solicit business for their new venture, Apropos. To consider this information, easily obtainable through any number of sources, the "sole property of Renee Beauty Salons, Inc." is to stretch the trade secret doctrine to the point of unrecognizability.

Renee argues that even if the customers' names were memorized by the stylists, "[t]here is no way they could have known that information had they not worked at Renee." We do not dispute this assertion, but the fact that the names were gained while in the employ of Renee does not make them trade secrets. To find otherwise would require any hair stylist leaving Renee to forsake all the customers accumulated during that period of employment and begin afresh with their new employer. To do so would all but enslave employees, create a "chilling effect" on new businesses and impose a

greater burden on hair stylists than on milkmen, travel agents, aerobics instructors, plumbers, physicians or attorneys. In services such as these, intense relationships and loyalty to the service provider often develop. As such, customers naturally will follow the employee to the new employer, rather than remain customers of the former employer. An injunction will not make Renee patrons of those who desire to go elsewhere.

We find instructive and elucidative the Supreme Court's decision in *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 415 Pa. 276, 203 A.2d 469 (1964). In *Colteryahn*, certain driver-salesmen formerly employed by Colteryahn who went to work for one of its rivals, Schneider, were enjoined for a four-month period from divulging the names, or soliciting the patronage of, Colteryahn customers, and Schneider was enjoined from soliciting the patronage of Colteryahn customers made known to them by the former drivers. The Supreme Court vacated the injunction, except to enjoin the drivers from making "false and misleading representations ... to play on the sympathies of the customers and influence them so that they could be obtained by Schneider." *Id.* at 283, 203 A.2d at 473.

In so finding, the *Colteryahn* Court stated: "Generally, in the absence of an express contract to the contrary, solicitation of a former employer's customers, on behalf of another in competition with his former employer, will not be enjoined." *Id.* at 279, 203 A.2d at 471. The Court also held: "It is thus apparent, after brief reflection, that [customer] lists are generally not the type secrets which require equitable preservation. Equity will not protect mere names and addresses easily ascertainable by observation or reference to directories: *Denawetz v. Milch*, 407 Pa. 115, 178 A.2d 701 [1962]." *Id.*, 415 Pa. at 283, 203 A.2d at 473.[1] *See also Gilbert v. Otterson*, 379 Pa.Super. 481, 550 A.2d 550 (1988).

For all of the foregoing reasons, we find the chancellor erred as a matter of law in determining that the stylists'

---

1. The *Colteryahn* Court also found the decision in *Morgan* distinguishable and limited by its facts. *Id.* at 283, 203 A.2d at 473.

compilation of their customers' names constituted a trade secret, the appropriation of which entitled Renee to equitable relief. The chancellor, however, vacated the injunction based on a finding of "unclean hands" on the part of Renee. Consequently, we affirm the Order of December 9, 1993 without reaching the merits of the "clean hands" issue. *Wecht v. PG Pub. Co.,* 353 Pa.Super. 493, 495, 510 A.2d 769, 771 (1986) ("We may affirm a decision of the trial court when its is correct on any legal ground or theory without regard to the ground upon which the trial court relied.")

Order affirmed.