**IRON AGE CORPORATION,
A Delaware Corporation,
Appellant,**

v.

**Joseph Gerard DVORAK, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued March 30, 2005.
Filed July 26, 2005.

---

A. Richard Tudker, III, Pittsburgh, for appellant.

Thor Y. Urness, Nashville, TN, for appellee.

Before: HUDOCK, POPOVICH and JOHNSON, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an interlocutory appeal as of right from an order denying a preliminary injunction. We affirm.

¶ 2 In this equity action, Iron Age Corporation (Iron Age) seeks to enforce a confidentiality agreement against Joseph Gerard Dvorak, Jr. (Dvorak), a former employee, and appeals from the order of the trial court denying its request that a preliminary injunction be entered against Dvorak to enjoin him from working for a competitor because such employment is "likely to result" in the disclosure of Iron Age's confidential information. The trial court made the following apt factual findings:

1. [Iron Age] is a provider of safety footwear and accessories.

2. [Dvorak] has been a safety shoe sales person for twenty years and for the last sixteen years an employee of [Iron Age] until his resignation as district sales manager in April 2004.

3. [Dvorak] had no specialized training but was a high school graduate with two years of community college before becoming a salesman for the Knapp Safety Shoe Company.

4. After four years with Knapp[, Dvorak] moved to [Iron Age] in 1988 and worked his way up to a district sales manager.

5. In September 2002, [Iron Age] requested District Sales Managers to execute an "Employee Nondisclosure and Confidentiality Agreement", represented to them solely to prevent the "passing of sensitive documents or information regarding customers, sales, financials, or other such information".

6. [Dvorak] refused to execute the agreement.

7. [Dvorak] was thereafter contacted by [Iron Age's] CEO Bill Mills who provided written assurance that this was not a non-compete agreement since no consideration was to be given and that "it does not prohibit anyone from leaving the employment of the Company and engaging in the industry with a competitive entity".

8. [Dvorak] still did not sign the agreement and he was personally contacted by [Mills] who provided additional verbal assurances of the limited scope of the agreement.

9. [Dvorak] thereafter signed the agreement in November 2002 without receiving any additional consideration.

10. [Mills] was replaced [as CEO] in December of 2003.

11. [Dvorak] resigned April [2], 2004 and began employment with a competitor the following day.

12. [Iron Age's] evidence as to confidential information acquired by [Dvorak] during the course of his employment was limited to the identity of customers, existing shoemobile schedules, discounts as to certain buyers and the failure to return all material at the time of resignation.

Trial Court Opinion, 7/19/04, at 1–3.

¶ 3 On April 8, 2004, Iron Age filed a complaint in equity against Dvorak requesting both exemplary and punitive damages as well as permanent injunctive relief. That same day, Iron Age filed a motion seeking a preliminary injunction which sought the following relief:

(1) that Dvorak be required to return all originals and copies of all documents, software, files, materials and property received or taken in the course of his employment with Iron Age;

(2) that Dvorak provide an accounting of all materials and property of Iron Age, or relating to Iron Age's customers, sold or otherwise disposed of by him;

(3) that Dvorak be barred from retaining, using, disseminating or disclosing to any third party, any confidential, proprietary or trade secrets information of Iron Age; and

(4) that Dvorak be prohibited from directly or indirectly contacting, soliciting, inducing or obtaining from any Iron Age active prospect or customer in its Maryland Region.

Iron Age's Brief at 5 (quoting Motion for Preliminary Injunction at 8–9).

¶ 4 Dvorak filed preliminary objections and both parties filed briefs supporting their position. On May 26, 2004, the trial court conducted a hearing, at which both parties produced numerous exhibits, documents and depositions. On July 19, 2004, the trial court issued an opinion and order denying Iron Age's preliminary injunction request. (The opinion and order were not docketed until the following day, July 20, 2004). On August 17, 2004, Iron Age filed a timely interlocutory appeal as of right under Pennsylvania Rule of Appellate Procedure 311(a)(4). *See Vonada v. Long,* 852 A.2d 331, 335–336 (Pa.Super.2004), *appeal denied* 582 Pa. 678, 868 A.2d 1202 (2005) (explicating proper construction of Rule 311(a)(4)).

¶ 5 Iron Age (hereafter Appellant) presents the following questions for this Court's consideration:

1. Whether the trial court erred in not barring Dvorak from contacting, soliciting or obtaining business from Iron Age's customers and prospective customers?

2. Whether the trial court erred in failing to address Iron Age's request that Dvorak be barred from using or disclosing its confidential, proprietary and trade secret information and be required to return certain confidential, proprietary and trade secret information to Iron Age?

Appellant's Brief at 4.

¶ 6 On appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but rather examine the record to determine if there were any apparently

reasonable grounds for the action of the court below. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 645–6, 828 A.2d 995, 1000 (2003). Only if it is plain that no grounds exist to support the decree or if the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court. *Id.* When a trial court denies a preliminary injunction, appellate review is "highly deferential." *Warehime v. Warehime*, 580 Pa. 201, 208–210, 860 A.2d 41, 46 (2004). This standard requires an appellate court to examine the record to determine if there were any apparently reasonable grounds for the ruling under review. *Id.* An appellate court will find that "apparently reasonable grounds" exist for the denial of injunctive relief if the trial court properly has found that any one of the necessary prerequisites is not satisfied. *Id.* See *Buffalo Township v. Jones*, 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002), *cert. denied*, 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003) (distinguishing the standard of appellate review applicable to the grant or denial of a permanent injunction versus the standard applicable to a ruling on a motion for a preliminary injunction).

¶ 7 Our Supreme Court has established six essential prerequisites which a party must establish prior to obtaining preliminary injunctive relief. *Warehime*, 580 Pa. at 208–210, 860 A.2d at 46.

The party must show 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

*Id.* at 209–210, 860 A.2d at 47–48 (citations and quotation omitted). The burden of proof is on the party who requested the preliminary injunctive relief. *Id.* In this case, that burden falls on Appellant.

¶ 8 Appellant contends that the trial court should have prohibited Dvorak (hereinafter Appellee) from contacting any of its present or prospective clients because doing so would lead to the inevitable disclosure of confidential information, *i.e.*, specific customer data. According to Appellant's theory, the confidential information at issue in this case constitutes "protectable trade secrets" covered by the confidentiality agreement Appellee signed. Appellant claims that the trial court should have granted a preliminary injunction prohibiting Appellee from soliciting any and all of Appellant's past, present and prospective customers on the grounds that any such solicitations allegedly would lead to the use and disclosure of the ostensibly confidential information.

¶ 9 Traditionally, a claim asserting the misappropriation of trade secrets arises in the context of an employer/employee relationship. *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1072 (Pa.Super.2003). In recognition of this, Pennsylvania courts have designed the following test for misappropriation:

(1) that there was a trade secret; (2) that it was of value to [the] employer and important in the conduct of his busi-

ness; (3) that by reason of discovery of ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the employee while he was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

*Id.* (emendations omitted).

¶ 10 Under *O.D. Anderson, Inc.,* Appellant was first required to demonstrate that the disputed information qualifies as a trade secret. *Id.* Some factors which a court may consider in determining whether information qualifies as a trade secret include:

(1) the extent to which the information is known outside the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Christopher M's Hand Poured Fudge, Inc. v. Hennon,* 699 A.2d 1272, 1275 (Pa.Super.1997). Nevertheless, the term "trade secret" does not include a worker's aptitude, skill, dexterity, or his manual and mental ability. *Id.* Nor will "such other subjective knowledge as he obtains while in the course of his employment" be protectable as a trade secret. *Id.* It is the plaintiff, in this case Appellant, who bears the burden of proving the existence of a trade secret. *Id.*

¶ 11 The considerations underlying a "trade secret" claim have been the subject of many cases in this Commonwealth. *Renee Beauty Salons, Inc. v. Blose–Venable,* 438 Pa.Super. 601, 652 A.2d 1345, 1347 (1995). Any such analysis must balance the right of a business person to be protected against "unfair competition stemming from the usurpation of his or her trade secrets" against the right of an individual to "the unhampered pursuit of the occupations and livelihoods for which he or she is best suited." *Id.* This Court has held that "the crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner." *O.D. Anderson, Inc.,* 815 A.2d at 1070.

¶ 12 Appellant contends that the specific customer data with which Appellee was entrusted constitutes a trade secret because the information was not known outside the company. Appellant correctly argues that our Supreme Court has held that, under certain circumstances, customer lists and customer data may be entitled to protection as trade secrets. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 624, 136 A.2d 838, 842 (1957). Furthermore, a trade secret may include compiled information which gives one business an opportunity to obtain an advantage over competitors. *Wellspan Health v. Bayliss,* 869 A.2d 990, 997 (Pa.Super.2005). Nevertheless, customer lists "are at the very periphery of the law of unfair competition." *Renee Beauty Salons, Inc.,* 652 A.2d at 1347. There is no legal incentive to protect the compilation of such lists "because they are developed in the normal course of business anyway." *Fidelity Fund, Inc. v. DiSanto,* 347 Pa.Super. 112, 500 A.2d 431, 436 (1985) (quoting *Corroon & Black–Rutters & Roberts, Inc. v. Hosch,* 109 Wis.2d 290, 296, 325 N.W.2d 883, 888 (1982)). *See id.,* 500 A.2d at 436–37 (discussing competing public policies

underlying the determination of whether certain types of data will be protected as a trade secret). Also, information will not be given injunctive protection as a trade secret if it can be obtained through legitimate means by a competitor. *Wellspan Health,* 869 A.2d at 997.

¶ 13 The very concept of a "trade secret" is itself "somewhat nebulous." *Den–Tal–Ez, Inc. v. Siemens Capital Corporation,* 389 Pa.Super. 219, 566 A.2d 1214, 1228 (1989). Therefore, the decision of whether a particular compilation of customer data deserves protection as a trade secret necessarily must be made on a case-by-case basis. *Id.* Our law is well settled that, to be classified as a trade secret, information must be an employer's actual secret and not comprise mere "general trade practices." *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273 (1976) (citing *Macbeth–Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 86 A. 688 (1913)). Furthermore, the information must be of peculiar importance to the employer's business before the law will protect it as a trade secret. *Id.*

¶ 14 Appellant cites the confidentiality agreement as evidence of the information's competitive value to their business and that the information was unique to Appellant and not a general trade practice. At the preliminary hearing, Appellant's witnesses testified that the information protected was obtained only through Appellant's substantial effort and expense. N.T., 5/26/04, at 26, 61. Furthermore, Appellee testified that Appellant employed a support staff to research prospective clients without competitors' knowledge. N.T., 5/19/04, at 93. However, Appellee presented ample evidence for the trial court to have ruled in his favor. Appellee testified that many industry customers are shared by multiple suppliers and, therefore, customer lists are widely known.

N.T., 5/19/04, at 16–17. Both Appellee and Appellant's own witness, Dennis Kuntz, testified that companies in the safety shoe industry identified their potential customers through public sources such as trade shows and the Internet, without substantial effort and expense. N.T., 5/26/04, at 43–44, 158–60. Finally, Appellee testified that competitors would coordinate visits to shared customers. N.T., 5/26/04, at 161. Appellee presented sufficient evidence for the record to reasonably support the trial court's ruling that the disputed information was not a trade secret. Appellant's compiled information is available to competitors through legitimate means and cannot be declared a trade secret. *See Wellspan,* 869 A.2d at 997 (declaring that information cannot be given injunctive protection as a trade secret if it is available to a competitor through legitimate means). Appellant failed to demonstrate that the trial court's ruling was "palpably erroneous" and, therefore, Appellant cannot receive injunctive relief for misappropriation of trade secrets. *See Summit Towne Centre, Inc.,* 573 Pa. at 645–6, 828 A.2d at 1000 (explaining appellate standard of review).

¶ 15 Appellant next contends that the trial court erred in even considering whether the disputed information qualifies as a trade secret. Appellant argues that the non-disclosure agreement indicated that the parties had previously agreed the disputed information was a trade secret and that the trial court substituted its own judgment for the parties' agreement. A non-disclosure covenant does not create a *per se* right to protection, but is merely indicative of the parties' agreement as to the information's confidential nature. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. at 625 n. 5, 136 A.2d at 843 n. 5. Furthermore, Appellant presents neither statutory nor case law to support its contention that the trial court was required to find the information was a trade

secret because a non-disclosure agreement existed. The argument portion of a brief must include pertinent discussion of the point raised as well as citations to relevant authority. *Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995). This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. *Id.* Appellant has failed to demonstrate that the specific information at issue in this case is entitled to injunctive protection by agreement of the parties, and we cannot grant the relief sought.

¶ 16 Appellant also argues that the trial court erred in not granting an injunction prohibiting Appellee from contacting or soliciting Appellant's clients because, according to Appellant, this was the best way to protect the purportedly confidential information. Appellant cites *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114 (1982) and *A.M. Skier Agency, Inc. v. Gold,* 747 A.2d 936 (Pa.Super.2000), in support of its position. Appellant claims both of these cases support imposing a preliminary injunction to prevent a former employee from working for a competitor where such employment will lead to inevitable trade secret disclosure.

¶ 17 First, as discussed above, we agree with the trial court that the disputed information was not entitled to injunctive protection. Second, the decisions cited by Appellant fail to provide any guidance in the present case. In *Air Products,* the employee possessed intimate knowledge of his former employer's research and development data for on-site gas delivery technologies. The employee's new employer was attempting to develop similar technologies, and the employee was hired to provide research and development data obtained through his previous employment. *Air Products,* 442 A.2d at 1117. In the instant case, Appellee possesses no such

technical knowledge, and Appellee's new employer already has an extensive customer base. Appellee was not hired to provide *information* he obtained through his employment with Appellant. Furthermore, Appellee's new employer required him to sign a written agreement stating he would not disclose any of Appellant's confidential information. N.T., 5/26/04, at 152.

¶ 18 In *A.M. Skier,* this Court found that it would be unfair to permit an employee who stole significant amounts of information to compete with a former employer. *Id.* In that case, three weeks before resigning, the former employee began printing dozens of highly confidential documents. *Id.* The employee also began compiling data on the firm's clients, including those under other managers, which was missing when he resigned. *Id.*

¶ 19 In the instant case, Appellee testified that he has returned all of the pertinent materials to Appellant. N.T., 5/26/04, at 156. The trial court found that Appellant failed to demonstrate any misconduct by Appellee or Appellee's new company. Trial Court Opinion, 7/19/04, at 5. Appellant's own witness testified that Appellee was a trustworthy individual. N.T., 5/26/04, at 44. Because the record adequately supports the trial court's conclusions, we find no basis on which we could grant relief.

¶ 20 Appellant's final argument is that the trial court failed to consider their request that Appellee be enjoined from disclosing Appellant's confidential information and that he must be required to return all documents. Appellant contends this argument does not necessitate a finding that the disputed documents are a trade secret. We agree with Appellant that employers may protect information through a confidentiality agreement even if it is not considered a trade secret. "Certain information protected by agreement may be protected only by agreement, as it

is considered by a business to be confidential, while not necessarily qualifying as trade secrets." *Den–Tal–Ez,* 566 A.2d at 1224. However, Appellant fails to identify what documents Appellee continues to possess or what information Appellee supposedly will disclose impermissibly through his new employment that has not already been declared to be unprotected. The trial court found that "[t]he materials which were not immediately returned were identified as old records and [Appellant] did not establish that they were utilized by [Appellee] for his new employer or that they contained confidential information." Trial Court Opinion, 7/19/04, at 5. We conclude that the trial court adequately addressed Appellant's contention that Appellee should be required to return the confidential documents he still possessed.

¶ 21 We agree with the trial court that Appellant has failed to show that a preliminary injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Furthermore, Appellant has failed to demonstrate that the activity it seeks to enjoin is actionable, that its right to relief is clear and that the wrong is manifest. Because the record discloses that reasonable grounds exist for the action taken by the trial court, and because we find no indication that the trial court either relied on a palpably erroneous rule of law or that it misapplied the law, we cannot reverse the trial court's decision to deny the preliminary injunction. *See Warehime,* 580 Pa. at 208–210, 860 A.2d at 46 (explaining standard of review from denial of a preliminary injunction); *Summit Towne Centre, Inc.,* 573 Pa. at 645–6, 828 A.2d at 1000 (same).

¶ 22 Order affirmed.