J-S04005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KWASI HANIF | : | |
| | : | |
| Appellant | : | No. 1831 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 3, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003960-2024

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 8, 2026**

Kwasi Hanif appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions of one count each of first-degree murder,[1] carrying a firearm without a license,[2] carrying a firearm on a public street or public property in Philadelphia,[3] and possession of an instrument of crime (PIC).[4] After review, we affirm.

The trial court summarized facts of the case as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Sergeant Joshua Godfrey; Philadelphia Police Officers Sean McAllister and Brian Stark; Camden County Police

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] *Id.* at § 6106(a)(1).

[3] *Id.* at § 6108.

[4] *Id.* at § 907(a).

Officer Pierre Reid; Philadelphia Assistant Medical Examiner Dr. Kaitlin Collura; Philadelphia Police Detectives Steven Blackwell and Thorsten Lucke; and civilian Antonia Woolfolk. The Commonwealth also presented, by stipulation, the testimony of Philadelphia Police Officers Deborah Kiker and Paul Ward, Philadelphia Prisons Custodian of Records Bradley Cakrane, and Joseph Reilly. [Hanif] did not present any evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following:

During the early morning hours of August 17, 2023, Acie Frames and his friend, Antonia Woolfolk, were inside the property at 545 North Creighton Street in Philadelphia. As described by [] Woolfolk, the property was a "drug house," where different people from the North Creighton Street area would go to use and purchase drugs. [] Frames was one of the people who sold drugs from the property.

Shortly before 2 a.m., while [] Frames and [] Woolfolk were spending time on the first floor of the home, [Hanif] arrived at the home and immediately went to the second floor. As [Hanif] went upstairs, [] Frames yelled at [Hanif] that he wasn't allowed to go upstairs because [] Frames did not know who [Hanif] was. After [Hanif] did not respond to [] Frames, [] Frames yelled at [Hanif] again. [Hanif] then came back down the stairs to the first floor, and the pair got into a verbal altercation. As [Hanif] left the home after the argument, he told [] Frames that "he would be back."

Almost immediately after [Hanif] left, he returned to the home and banged several times on the door. After [] Frames stood up and opened the door, [Hanif] shot [] Frames through the open door once in the chest. [Hanif] then left the area, and [] Frames collapsed. When first responders arrived at the scene at approximately 2[:00] a.m., [] Frames was unresponsive and was pronounced dead at the scene by medics. The medical examiner determined that [] Frames's cause of death was a gunshot wound to the chest, and his manner of death was homicide.

Trial Court Opinion, 7/21/25, at 2-3 (citations omitted).

The trial court imposed a mandatory life sentence without the possibility of parole for the first-degree murder conviction,[5] to run concurrently with sentences of three-and-a-half to seven years' incarceration for carrying a firearm without a license, one to two years' incarceration for carrying a firearm on a public street or public property in Philadelphia, and one to two years' incarceration for PIC.

Hanif filed post-sentence motions, which the trial court denied on May 28, 2025. Hanif timely appealed, and both Hanif and the trial court have complied with Pa.R.A.P. 1925. Hanif raises the following issues for our consideration:

1. Was the verdict against the weight of the evidence?

2. Was the evidence sufficient to establish [Hanif]'s guilt beyond a reasonable doubt for each offense? Specifically, was the evidence sufficient to prove beyond a reasonable doubt that [Hanif] formulated a specific intent to kill required to sustain a conviction for first-degree murder?

Appellant's Brief, at 6.

Hanif's weight of the evidence claim is waived for failure to properly develop the issue on appeal. Pursuant the Pennsylvania Rules of Appellate Procedure, "[t]he argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (quoting *Estate of Lakatosh*, 656 A.2d 1378, 1381 (Pa.

_____

[5] *Id.* at § 1102(a)(1).

Super. 1995)); *see also* Pa.R.A.P. 2119(a). A failure to cite relevant case or statutory authority constitutes waiver of the unsupported claim on appeal. *See In re Whitley*, 50 A.3d at 209 (citing *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 665 (Pa. Super. 2005)). Here, the argument section of Hanif's brief does not include a single sentence, citation to relevant authority, or even a heading for his weight of the evidence claim. *See* Appellant's Brief, at 9-12.[6] Accordingly, as Hanif has failed entirely to brief this claim, it is waived for purposes of review. *See In re Whitley*, *supra*; *Iron Age Corp.*, *supra*; Pa.R.A.P. 2119(a).

Hanif's remaining argument is that the evidence was insufficient to establish that he had the requisite intent for a conviction of first-degree murder.[7] *See* Appellant's Brief, at 10-12. Hanif puts forward three grounds in support of his claim that the evidence was insufficient: (1) that only three seconds passed between the verbal altercation and Hanif shooting Frames;[8]

---

[6] At most, under his "Summary of the Arguments" header, Hanif states that "The verdict was against the weight of the evidence." *Id.* at 8.

[7] Because Hanif only develops argument as to whether the Commonwealth put forward sufficient evidence to establish the specific intent for his first-degree murder conviction, we address only that issue and consider any other potential sufficiency arguments waived for purposes of this appeal. *See* Pa.R.A.P. 2119(a).

[8] Hanif claims that "[t]he testimony from [] Woolfork was that [Hanif] returned 'within three seconds' and shot [] Frames immediately after [Frames] opened the door[.]" Appellant's Brief, at 10 (citations omitted). That is not an accurate representation of Woolfork's testimony. Woolfork testified that a verbal altercation occurred between Hanif and Frames, Hanif left the house,
*(Footnote Continued Next Page)*

- 4 -

(2) that Hanif shot only once; and (3) that Hanif and Frames did not know each other prior to the incident. ***Id.***

Sufficiency of the evidence is a question of law; as such, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Coniker***, 290 A.3d 725, 733 (Pa. Super. 2023). When reviewing a challenge to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Lake***, 281 A.3d 341, 345 (Pa. Super. 2022) (citing ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000)). Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. ***Commonwealth v. Lynch***, 72 A.3d 706, 708 (Pa. Super. 2013) (en banc). Any doubt as to the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of

_____

other people who had been upstairs in the residence came downstairs and left the home, Frames locked the door, Woolfork and Frames briefly discussed what had happened, Frames explained to Woolfork that he would have been okay with Hanif entering if he had identified himself to Frames, and "[t]hen, like three seconds—not even three seconds later, there was a big bang on the door," which was Hanif returning to the residence, and "[Frames] jumped up so fast and, when he jumped up and unlocked the door, [Hanif] just shot him." N.T. Jury Trial (Day 2), 4/1/25, at 125-26. Based upon our reading, it is clear that all of the above occurred over a longer span of time than three seconds. That discrepancy notwithstanding, whether it was a three-second interval or longer is irrelevant to our ultimate disposition.

law, no probability of fact can be drawn from the combined circumstances. ***Lake***, 281 A.3d at 346.

Murder of the first degree is an intentional killing. ***See*** 18 Pa.C.S.A. § 2502(a). An "intentional killing" is a killing that is "willful, deliberate[,] and premeditated[.]" ***Id.*** at § 2502(d). To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill. ***Commonwealth v Le***, 208 A.3d 960, 969 (Pa. 2019).

The Commonwealth may prove the specific intent to kill "solely through circumstantial evidence." ***Commonwealth v. Blakeney***, 946 A.2d 645, 651 (Pa. 2008). A fact-finder may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body. ***Id.*** The specific intent to kill can be formed in a "fraction of a second." ***Commonwealth v. Rodriguez***, 340 A.3d 334, 348 (Pa. Super. 2025) (citing ***Commonwealth v. Clemons***, 200 A.3d 441, 463 (Pa. 2019)).

Based upon our review of the record, we conclude the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to prove beyond a reasonable doubt that Hanif acted with the specific intent to kill. As recounted above, the testimony adduced at trial established that: Hanif engaged in a verbal altercation with Frames, Hanif told Frames that he would be back, Hanif returned to the home and knocked on the door,

and Hanif shot Frames once in a vital part of the body, which resulted in Frames' death. The mere fact that Hanif used a deadly weapon on a vital part of a victim's body is sufficient evidence for the jury to find that Hanif formulated the specific intent to kill. **See Commonwealth v. Cash**, 137 A.3d 1262, 1269 (Pa. 2016) ("the specific intent to kill may be inferred where, as here, the accused uses a deadly weapon on a vital part of the victim's body"). Moreover, the brief period between the verbal altercation and the shooting was ample time for Hanif to form the requisite intent, which "can be formulated in a fraction of a second." **Clemons**, 200 A.3d at 463 (Pa. 2019); **see Commonwealth v. Counterman**, 719 A.2d 284, 292 (Pa. 1998) ("no particular period of premeditation is required to form the requisite intent"). Hanif's contention that he only shot once is similarly unavailing, as we reiterate that one shot toward the area of a vital organ is sufficient to prove the specific intent to kill. **See Cash**, **supra**; **see also Commonwealth v. Jackson**, 392 A.2d 1366, 1369 (Pa. 1978) (rejecting challenge to sufficiency of evidence for first-degree murder where appellant fired one shot which hit decedent in shoulder). Accordingly, the evidence of record provides sufficient support for Hanif's first-degree murder conviction. Thus, we affirm Hanif's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/8/2026